·HATTIE S. BRINKWORTH ET AL. V. ALFRED HAZLETT, RE-
CEIVER.

FILED MAY 8, 1902. No. 11,679.

Commissioner's opinion, Department No. 1.

1. **Receiver:** EXECUTION: RETURN NULLA BONA: STOCKHOLDER'S
LIABILITY: CONDITION PRECEDENT. It is not necessary that a
receiver of an insolvent bank procure executions against him-
self and a return of *nulla bona* on all claims against the bank
before commencing action to enforce stockholder's liability.

2. **Action:** DEFENSE. In such action misconduct of the receiver and
his possession of unreported assets is no defense.

3. **Conflicting Evidence:** FINDING. Where evidence is merely con-
flicting, finding of the ·trial court that a party was owner of
certain shares in the bank at the time of insolvency will not
be disturbed.

4. **Claim:** BASIS OF ACTION. The "claim," which can furnish the
basis for an action to compel a devisee to return a portion of
estate assigned to him by proper probate proceedings, must be
one allowed in the probate court, or "established" by proper
legal proceedings elsewhere, as a liability of the estate involved.

ERROR from the district court for Gage county. Tried
below before LETTON, J. *Affirmed in part.*

*Ernest O. Kretsinger,* for plaintiffs in error.

*G. M. Johnston* and *Fulton Jack, contra.*

HASTINGS, C.

Mrs. Delia B. Hotchkiss was owner of four shares of
capital stock of the American Bank of Beatrice, of par
value of $100 each. The bank failed, and closed its doors
July 1, 1893, and the state banking board took possession.
A bond in the sum of $100,000 was given by the bank and
its officers and the assets turned back and nine months
allowed for voluntary liquidation. The liabilities were
not paid and March 1, 1899, defendant in error was ap-
pointed receiver and took charge of the assets. Mrs. Hotch-
kiss died on July 2, 1897, in Gage county. She was pos-

sessed at the time of her death of real and personal prop-
erty in the county more than sufficient to.pay all her debts,
including any liability to the American Bank or its cred-
itors on account of this stock.   August 30, 1897, a petition
to probate the will of Mrs. Hotchkiss was filed.   Septem-
ber 24,1897, was fixed as the day of hearing, and due notice
given, and on that day the will was admitted to probate
and administration with will annexed was granted to W.
H. Mahanah.   He gave bond, took his oath and assumed
the duties of administrator the same day, and on the same
day six months were allowed for filing of claims against
the estate, and the first Monday in June fixed as the time
for hearing them.   An order was entered that notice of
this be given by publication in the *Beatrice Weekly Ex-
press,* which was done.   March 25, 1899, the administrator
petitioned to be discharged and for settlement of his ac-
count.   His petition was set for hearing April 21, 1899, and
notice was given.   On that day the account of the admin-
istrator was settled and, according to the terms of Mrs.
Hotchkiss's will, $537 was ordered distributed to Mrs.
Bridges, her daughter, and plaintiff in error here.   A like
sum was allotted to Mrs. Brinkworth, the other plaintiff
in error, and $53.94 to the Congregational Church of Bea-
trice, and $104 to the Congregational Church of Odell and
some real estate to another daughter, Mrs. McMahon.   In
the meanwhile, on June 27, 1898, the receiver had reported
the assets of the bank exhausted and its liabilities to a
large amount unpaid, and had been ordered to bring suit
to enforce the liability of the stockholders.   November 15,
1898, the receiver filed a petition in the district court of
Gage county against fifty-nine persons and corporations,
setting .out the incorporation and the insolvency of the
bank, his receivership, the disposition of the assets, the
remaining liabilities of the bank and that the defendants
were stockholders either in their own right or as trans-
ferees and successors in trust.   Among the defendants
Delia B. Hotchkiss was named.   She was already dead,
as has been seen.   June 22, 1899, an amended and supple-

42

mental petition was filed, setting out her death, the appointment of her administrator, that he received $1,450 of personal property, and paid $214 expenses, and distributed the rest as above stated, and was discharged on May 12, 1899, on filing his receipts, and that a lot in Beatrice was assigned to Mrs. McMahon. Four hundred dollars was claimed from these distributees on account of Mrs. Hotchkiss's liability as a stockholder. Summons was issued on the supplemental petition for Mrs. Bridges, Mrs. Brinkworth, the two churches and Mrs. McMahon. No service was obtained upon the latter nor upon the church of Odell. The service upon the Congregational Church of Beatrice was upon Hugh J. Dobbs, trustee. There was no appearance by any of these last three. Mrs. Brinkworth and Mrs. Bridges answered, denying generally; alleging the receiver had funds of the bank not accounted for, the execution of the $100,000 bond and the turning of the assets over to the obligors without Mrs. Hotchkiss's consent, the sufficiency of the bond to provide for all claims, and that this action without her assent released Mrs. Hotchkiss; that the receiver's authority was disputed by the creditors who were most of them looking to the bond; improper settlements with debtors of the bank; the statute of limitations; and the administration of Mrs. Hotchkiss's estate with no claim filed against it and that thereby all claim against them was barred. In the same action John Warren had answered previously, denying generally, setting out the same defenses as to the action of the receiver in managing the estate and in addition had claimed negligence in not proceeding against the estate of Delia B. Hotchkiss. He also alleged that his daughter, Florence Warren, in 1888 became owner of ten shares of the stock and subsequently five more were issued to her, in consideration of work for the bank as bookkeeper; that she died in 1891 and before her death gave the stock to her brother and sister; that after her death, against Warren's objection, this stock was taken up and a new certificate issued to him; that he, on behalf of his son and

daughter, the true owners, traded this stock, before any liability accrued on it, to one Frorer and the consideration was turned over to the true owners and the stock assigned and requested to be transferred on the bank's book, and, if it was not done, no fault nor liability attached to him, Warren. This answer of Warren's seems to have led to the proceedings against the beneficiaries under Mrs. Hotchkiss's will. Replies were filed denying the new matter in the answers and denying the sufficiency to constitute a defense, of the allegations of funds in the receiver's hands, and of the various allegations as to the previous management of the trust. The court found the bank insolvent and that the receiver had exhausted its assets and obtained an order to proceed against the stockholders; found the liabilities as alleged; found that Mrs. Hotchkiss and John Warren were owners, respectively, of four and fifteen shares in the bank when it failed, and liable for $400 and $1,500, respectively. The court also found that Mrs. Brinkworth and Mrs. Bridges each received $537.37 from Mrs. Hotchkiss's estate and the Beatrice Congregational Church $53.74 and that each of them were liable for the whole $400 on account of Mrs. Hotchkiss's shares, not exceeding, however, the amount received by each. There were findings, also, as to the rest of the stock, that each holder was liable in this action for the face amount of it, and judgment was entered against each holder for the amounts named, with a proviso, as to Mrs. Brinkworth and Mrs. Bridges and the Beatrice Congregational Church, that the recovery from each was not to exceed the amount found to have been received from Mrs. Hotchkiss's estate.

There are fifty-five assignments of error, but in the brief only four are urged: First, that there can be no recovery against Mrs. Brinkworth and Mrs. Bridges because of the failure to file any claim against the estate of Mrs. Hotchkiss while it was in progress of administration; second, that John Warren was not a stockholder in fact, and not liable as such; third, that there was error in holding that the defendants should not be permitted to prove assets

still in the hands of the receiver unaccounted for by him and losses through his negligence; and in addition to these three, that the record does not show executions issued and returned unsatisfied on each of the various judgments against the bank and the receiver.

It is claimed that the failure to allege such executions is fatal to the receiver's pleading, and the failure to prove it, to any recovery. It is admitted that three such executions, issued and returned in 1895, were shown; but it is claimed that this is not sufficient, but that the issuance and return of executions should have been alleged and proved as to each of the claims. This last assertion of error hardly seems to require further consideration. If the action were brought, as is permitted by some statutes and practiced in some jurisdictions, directly by the creditor, it might be required of him to show an execution against the bank before assailing a stockholder, as such. But surely a receiver ought not to be required to issue and pay for executions against himself in order to make sure he has no trust funds still in his hands. If the statute expressly required such an absurdity, it would have to be gone through with. It would hardly be worthy of a court to require it by judicial construction.

The complaint that there were, or ought to be, funds, applicable to these debts still in the receiver's hands, does not appear any better founded. The creditors were entitled to have the stockholders respond if the assets of the bank were in fact gone, if they were gone without such fault on the creditor's part, as discharged the debt. There seems no more reason for holding that the orders approving the receiver's reports, and the finding that the resources of the bank were exhausted, were disputable in this action, than for a like holding as to the creditor's judgment against the bank and its receiver. The receiver was no more an adverse party to the stockholders in disposing of the property than he was to the creditors in proving their claims. If either suffered damage by his wrong-doing, they had a remedy on his bond.

The question as to John Warren is simply one of fact. Was he, or was he not, a stockholder under the evidence in the case? The trial court found he was and his counsel claims the evidence does not sustain the finding. His daughter, Florence, who died in 1891, had at that time fifteen shares. Warren testifies that she orally assigned these shares to her brother and sister. He made out a release or assignment to the bank dated May 25, 1891, as "sole heir and legal representative of Florence Warren." He says this was done at that date, but later, but does not deny executing the assignment. A new certificate in his own name was made, which he says he objected to, but finally took. He admits his signature to a receipt for it to the bank. There is evidence tending to show he received a dividend July 1, 1892, though he denies this. In that year, or early in the next, he traded the new certificate to one Frorer, of Lincoln, Illinois. This trade was completed only after the closing of the bank and Warren then, in August, or later in 1893, assigned the certificate. The most that can be said as to this evidence is that it is conflicting and the trial court's decision should not be disturbed.

The first point made has been left until the last, because it has caused the most difficulty here, as it did evidently at the trial. The trial court, on June 12, 1899, at a hearing as to a claim of defect of parties defendant, found that the legal representatives of Delia B. Hotchkiss were necessary parties, and entered an order requiring the receiver to make the legal representatives of Delia B. Hotchkiss parties. June 22, 1899, supplemental petition was filed against the legatees, as before stated. It is claimed that the finding against these legatees can not be supported, because the claims were not presented against the estate and were barred by the six months' notice and order barring claims. Compiled Statutes, ch. 23, sec. 226. Defendant in error, however, says that the claim at the time of the bar was a contingent one, and only became absolute and enforceable for a definite sum when the assets

of the bank were exhausted and the liabilities left unpaid. *Farmers' Loan & Trust Co. v. Funk,* 49 Nebr., 353; *Van Pelt v. Gardner,* 54 Nebr., 701. This made it a contingent claim. *Stichter v. Cox,* 52 Nebr., 532. As a contingent claim it was not barred. It might be presented to the probate court, or to the executor or administrator, at any time within two years after the time limited for presenting claims. Compiled Statutes, ch. 23, sec. 260. If it did not accrue within two years it might be presented at any time within a year after it accrued. Sec. 262.

It remains to be considered, however, whether the fact that an action remained against the estate authorized the making of the legatees parties without proceeding to establish the claim against the estate, as such. The legatees, merely as such, would not be proper parties to this action. If, as the court found, it was necessary that the estate of Delia B. Hotchkiss be a party to the proceedings, a new administrator must be appointed for such purpose. The legatees, even if all were made parties and served, would not do as personal representatives of the deceased. They would have no authority to act jointly. They could only be made parties under the provisions of sections 263 and 266 of the statute cited. These sections appear to contemplate the establishment of a claim against the estate first. Section 263 expressly provides for a liability of heirs, devisees or legatees who have received property "when a claim shall be presented within one year from the time when it shall accrue and be established, as mentioned in the preceding section." The "establishment," as shown by reference to sections 261 and 262 of the statute cited, is by allowance in the probate court or on appeal from it. Section 266 closes with the provision that "no such action shall be maintained unless commenced within one year from the time the claim shall be allowed or established." Clearly neither of these sections contemplate an action against an heir or devisee until the claim is "established" against the estate. No doubt, as ordered by the trial court, the personal representative of the deceased stockholder

Brinkworth v. Hazlett.

was a proper party, and if an administrator had been appointed and made a party here, and the result had been the same finding of liability on this stock that resulted, beyond all doubt, when such result was certified to the county court, the claim would have been "established," and the basis laid for demanding a return of so much of the estate from any legatee who had received it. Defendant in error cites *South Milwaukee Co. v. Murphy,* 88 N. W. Rep. [Wis.], 583, to the effect that the action may proceed directly against the recipients of the estate. The Wisconsin statute, however, on which the court was acting in that case, contains no such provisions as ours as to an established claim. Moreover, it is not a statute regulating descent and distribution but a code provision as to civil actions.

It seems clear that the basis of a proceeding against an heir or devisee to recover property assigned him by the probate court, is an allowed or established claim. As the time is now gone by for presenting such claim, it is recommended that the decree of the trial court as to the legatees of Delia B. Hotchkiss be reversed and the action dismissed as to them, and as to all the other matters in the decree that the same be affirmed.

DAY and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the trial court as to the legatees of Delia B. Hotchkiss is reversed and the action as to them dismissed, and as to all of the other matters in the decree the same are affirmed.

JUDGMENT ACCORDINGLY.